UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID W. ALLARD,

        Plaintiff,                        Civil Action No. 11-CV-10984

    v.                                 HON. BERNARD A. FRIEDMAN

CITY OF TOLEDO,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IMPROPER VENUE OR IN THE ALTERNATIVE TRANSFER**

        This matter is presently before the court on Defendant's motion to dismiss Plaintiff's complaint for lack of personal jurisdiction or improper venue, or in the alternative transfer the case to the Northern District of Ohio [docket entry 8]. For the reasons that follow, the court will deny Defendant's motion.

*Background*

        Plaintiff David Allard is the Chapter 11 trustee for three LLCs which own and operate the Lost Peninsula Marina ("the Marina") in Erie Township, Michigan. Defendant City of Toledo is an Ohio municipal corporation. This dispute arises out of Defendant's long-standing agreement to provide water services to Monroe County, Michigan, where the Marina is located.

In 1969, Defendant entered into a 40-year contract ("the 1969 Water Agreement") to sell its surplus water to Monroe County, Michigan. This agreement made Defendant the exclusive provider of water for certain portions of Monroe County, including all of Erie Township (where Plaintiff's property is located). Under this agreement, Monroe County was responsible for constructing and maintaining "trunk mains" that connected to Defendant's water system in Toledo and ran across the border into Michigan. Defendant charged Monroe County for the water provided through these mains each month based on meter readings taken at the connection points in Ohio. The contract provided that Defendant did not guarantee any fixed pressure or continuous supply of water to the Monroe County Water District, and also included a provision that Ohio law would apply.

The 1969 Water Agreement expired in 2009, but Defendant continued to provide water to Monroe County on the same terms until a new agreement was reached—between the same parties—in January 2011. The new water provision contract ("the 2011 Water Agreement") is substantively similar to the 1969 Water Agreement. However, the 2011 Water Agreement includes some new provisions that bear mentioning. First, Section 11.A explicitly states that the agreement between Defendant and Monroe County is not intended to confer any benefits, rights, or remedies to third parties (such as Plaintiff); there was no mention of third party beneficiaries in the 1969 Water Agreement. Second, Section 11.C is a forum selection clause stating that the parties to the contract unconditionally consent to jurisdiction and venue in either Lucas County, Ohio, or the Northern District of Ohio; the 1969 Agreement had no such provision.

The Marina is one of the Erie Township properties serviced under the 1969 and 2011 Water Agreements. It is located just over the Ohio-Michigan border on the Michigan side.

Mel Belovicz and Christopher Connolly ("the Owners") formed 3 LLCs—of which the Owners are the sole members—in the early 1990s in order to purchase, develop, and operate the Marina; one of the LLCs purchased the Marina in 1994. The Owners' redevelopment plans included building a clubhouse, swimming pool, and waterfront residential units; redesigning the marina slips; and upgrading the site's infrastructure. However, these plans fell through, and the 3 LLCs filed for Chapter 11 Bankruptcy in 2007.

Chapter 11 Bankruptcy Trustee Allard—the plaintiff in this case—alleges that the 6-inch water main that services the Marina property is in poor condition and is unable to provide the Marina with sufficient water pressure and flow, and that the resulting lack of sufficient water pressure to the property prevented the Owners from carrying out the planned development or selling the property to another buyer. Soon after his appointment, Plaintiff requested that Erie Township pursue a "Water Service Provision" with Defendant that would provide the Marina with sufficient water pressure. In particular, Plaintiff wanted the 6-inch water main replaced with a 12-inch main. Erie allegedly told Plaintiff to contact the South County Water Board, which administers the Monroe County Water District. In December 2008, the Water Board told Plaintiff that it would not pursue the requested Water Service Provision, allegedly claiming that the issue was Defendant's responsibility. Plaintiff claims that the then-Mayor of Toledo communicated to the Water Board that it would not let the Water Service Provision proceed "based on nothing more than raw political animus." (Compl. at ¶ 27.) Plaintiff contends that he has also tried to work directly with Defendant, but to no avail. In particular, Plaintiff alleges that Defendant refused to provide him with a procedure for securing a Water Service Provision that would provide better water pressure to the property, and instead referred him back to the South County Water Board.

On March 11, 2011, Plaintiff commenced this lawsuit against Defendant in this Court. Plaintiff claims that by failing to provide Plaintiff with sufficient water pressure and then arbitrarily and capriciously refusing to provide Plaintiff with a procedure to secure better infrastructure for the Marina in the future, Defendant has violated and continues to violate Plaintiff's constitutional rights under the due process clause, equal protection clause, and the privileges and immunities clause. Plaintiff is also suing for breach of contract as a third party beneficiary of the 1969 Water Agreement between Defendant and Monroe County. Plaintiff seeks money damages, an order requiring Defendant to provide for a procedure for the review and approval of a request by Plaintiff for improved infrastructure (the so-called Water Service Provision), and an order requiring Defendant to permit the installation of all infrastructure necessary to effect the requested Water Service Provision.

*Defendant's Motion to Dismiss or Transfer*

Instead of answering the complaint, Defendant has filed a motion to dismiss or transfer the case to the Northern District of Ohio. In support of its motion to dismiss, Defendant argues that the 1969 Water Agreement did not establish sufficient contacts with Michigan, and therefore personal jurisdiction is lacking. Plaintiff responds that Defendant's ongoing contractual relationship with Monroe County suffices for both limited and general personal jurisdiction, and that its motion to dismiss should therefore be denied. In support of its request for transfer, Defendant argues that the Eastern District of Michigan is an improper venue, and that the Northern District of Ohio would be a more convenient forum. Plaintiff responds that venue is proper, and that the relevant factors weigh against transferring the case to Ohio.

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant argues that the court lacks personal jurisdiction because Defendant has insufficient contacts with Michigan. Plaintiff takes the position that Defendant's contacts with Michigan are sufficient and that the motion to dismiss should be denied.

*Applicable Law*

Under Michigan law, courts cannot exercise personal jurisdiction over a non-resident defendant unless (1) jurisdiction is authorized by one or more of Michigan's long-arm statutes and (2) exercising jurisdiction will not violate the defendant's constitutional rights to due process.

Michigan law allows for personal jurisdiction over corporations under either of the following two statutes:

> **600.711. General personal jurisdiction over corporations.**
>
> Sec. 711. The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1) Incorporation under the laws of this state.
>
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.
>
> (3) The carrying on of a continuous and systematic part of its general business within the state.
>
> **600.715. Corporations; limited personal jurisdiction**
>
> Sec. 715. The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over such corporation and to enable the court to

render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

The Sixth Circuit has construed "the transaction of any business within the state" broadly to include even the "slightest" business. *Theunissen v. Matthews*, 935 F.2d 1454, 1463-64 (6th Cir. 1991) (citing *Hertzberg & Noveck v. Spoon*, 681 F.2d 474, 478 (6th Cir. 1982); *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 905-06 (6th Cir. 1971)).

The Michigan Supreme Court has held that Michigan's long-arm statutes authorize the exercise of personal jurisdiction over non-resident defendants to the greatest extent permitted under the Constitution. *See, e.g., Green v. Wilson*, 455 Mich. 342 (1997); *Sifers v. Horen*, 385 Mich. 195 (1971). Therefore, when personal jurisdiction is challenged, the issue is whether a defendant's contacts with Michigan are such that "traditional notions of fair play and substantial justice" permit the exercise of jurisdiction. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The Sixth Circuit has held that due process allows limited personal jurisdiction to be exercised over a non-resident defendant only if (1) the defendant "purposefully avail[s] himself of the privilege of acting in the forum state or causing consequences in the forum state"; (2) "the cause of action . . . arise[s] from the defendant's activities there"; and (3) "the acts of the defendant or consequences . . . have a substantial enough connection with the forum state to

6

make the exercise of jurisdiction over the defendant reasonable." *Theunissen*, 935 F.2d at 1460 (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Elaborating on the "purposeful availment" factor, the Supreme Court has stated: "[W]hen the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984); *Travelers Health Ass'n v. Va.*, 339 U.S. 643, 648 (1950)). This requirement ensures that a "defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citing *Keeton*, 465 U.S. at 774; *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).

The Sixth Circuit has held that the "arising out of" prong requires only that the cause of action have a "substantial connection with" the defendant's activities in the forum. *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *S. Mach. Co.*, 401 F.2d at 384 n. 27). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Id.*

Finally, the "reasonableness" prong requires courts to determine if exercising personal jurisdiction over a non-resident defendant would "comport with traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). Courts must consider several factors when determining if it would be reasonable to

exercise jurisdiction in the context of a particular case; these factors include the burden that litigating in the forum will place on the defendant, the forum state's interest in the case, the plaintiff's interest in obtaining relief, and the inter-state judicial system's interest in obtaining the "most efficient resolution of controversies." *Id.* The Sixth Circuit has indicated that an inference arises that the reasonableness requirement is satisfied if the first two requirements of the three-prong test are met. *See Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (citing *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)). A defendant who has purposefully availed himself of the privilege of conducting activities in the forum must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat Plaintiff's jurisdiction claim. *Burger King*, 471 U.S. at 477.

As mentioned above, courts may exercise *limited* personal jurisdiction only when the cause of action arises from the defendant's activities in the forum. However, if *general* jurisdiction is present, then the court may hear any and all claims the plaintiff may have against the defendant. *See Helicopteros*, 466 U.S. at 414-15. Courts may only exercise general personal jurisdiction over corporate defendants who reside in, consent to jurisdiction in, or carry on a "continuous and systematic part of [their] general business" in the forum state. MICH. COMP. LAWS § 600.711 (1961). Courts have considered a number of factors when deciding if a corporation carries on a "continuous and systematic part of its general business" in the forum, including direct solicitation or advertising, maintaining agents, making sales on a regular basis, and obtaining a not-insignificant amount of revenue from the forum. *See, e.g., Mich. Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989) (finding general personal jurisdiction when defendant had an independent sales representative based in Michigan, conducted mail

order solicitations of Michigan business, and made over 400 sales—at least one sale per month—over the course of two years to Michigan customers).

It is Plaintiff's burden to establish personal jurisdiction. *See Theunissen*, 935 F.2d at 1458. When a defendant seeks dismissal for lack of personal jurisdiction, the court may (1) decide the motion based solely on the pleadings and affidavits; (2) reserve ruling until after the parties have conducted limited discovery on the personal jurisdiction question; or (3) conduct an evidentiary hearing to resolve any factual disputes concerning personal jurisdiction. *See id.* Because the court has selected the first option, it will view the pleadings and affidavits in the light most favorable to Plaintiff, and Plaintiff may defeat the motion by making a prima facie showing of personal jurisdiction. *See Serras v. First Tenn. Bank*, 875 F.2d 1212, 1214 (6th Cir. 1989). Defendant's "controverting assertions" are not to be considered. This prevents non-resident defendants from "avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe*, 89 F.3d at 1262 (citations and internal quotation marks omitted).

*Analysis*

Plaintiff's burden at this point is simply to make a prima facie showing of personal jurisdiction. Plaintiff argues that the 1969 Water Agreement created sufficient minimum contacts to subject Defendant to the Court's limited personal jurisdiction. (Pl.'s Br. at 7.) Defendant argues that the 1969 Water Agreement did *not* create minimum contacts with Michigan. Defendant focuses on the lack of physical contact between Toledo and Michigan—it points out that it does not own or operate any "utility infrastructure" in Michigan or the South County Water System, and that Monroe County comes into Ohio to attach its water mains to

9

Defendant's. (Def.'s Mot. at 3.) Plaintiff responds that the location of water service infrastructure is immaterial, relying on *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002), in which the Sixth Circuit found that the fact that a website is hosted in Pennsylvania is immaterial if Michigan residents can and do interact with the site. (Pl.'s Br. at 7-8.) Plaintiff argues that the real test is whether Toledo's water will find its way to Michigan customers. (Pl.'s Br. at 7-8.) Defendant also argues that it did not solicit the Marina or any other residents of Michigan to buy its water, and that the Marina is a customer of Monroe County, not Defendant. (Def.'s Mot. at 3-4.) Plaintiff responds that the fact that Plaintiff was not a party to the 1969 Water Agreement is irrelevant, because the issue is not Defendant's relationship with a particular party in Michigan, but "its relationship with the *state itself*." (Pl.'s Br. at 8; emphasis in original.) Finally, Defendant argues in its reply that it did not solicit business from Monroe County, and that instead Monroe County came to Toledo seeking to buy water. (Def.'s Reply at 2.) Defendant points to language from the 2011 Water Agreement (e.g., "the County has requested Toledo to continue to supply water") as evidence that it did not initiate contacts with Michigan. (Def.'s Reply at 2 and attached "Water Agreement" at 3.)

Plaintiff has met its burden of establishing a prima facie case of personal jurisdiction. Selling water to a Michigan county for over 40 years clearly qualifies as "transacting any business" within Michigan. MICH. COMP. LAWS § 600.715(1). This contractual relationship also shows that Defendant purposefully availed itself of the privilege of acting in Michigan by "deliberately" creating an "ongoing relationship" with a Michigan party, and therefore satisfies the first prong of the three-prong due process inquiry. *See Burger King*, 471 U.S. at 475; *Theunissen*, 935 F.2d at 1460. In light of these long-term and systematic contacts with Monroe County, Defendant cannot escape jurisdiction by merely pointing to contractual

10

language in the 2011 Water Agreement suggesting that Monroe County initiated a renewal of the 1969 contract, or by arguing that it does not own any water infrastructure in Michigan. *See Burger King*, 471 U.S. at 476 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."). The second prong is also satisfied because Plaintiff's causes of action have a "substantial connection" to Defendant's act of selling water to Monroe County for over 40 years under the Water Service Agreements. *See Third Nat'l Bank*, 882 F.2d at 1091. Defendant does not address the "arising out of" issue directly; it only denies that minimum contacts exist in the first place. (Def.'s Mot. at 2-3.) Finally, Defendant does not raise any arguments to defeat the inference that subjecting it to personal jurisdiction in the Eastern District of Michigan is not unreasonable. *See Burger King*, 471 U.S. at 477; *Bird*, 289 F.3d at 875; *Theunissen*, 935 F.2d at 1460; *Third Nat'l Bank.*, 882 F.2d at 1091.

       Plaintiff also argues that the 1969 Water Agreement, and the ensuing 40-year relationship between Defendant and Monroe County, shows that Defendant carried on "a continuous and systematic part of its general business" in Michigan and therefore is subject to *general* personal jurisdiction. *See Helicopteros*, 466 U.S. at 414-15, nn. 8-10; MICH. COMP. LAWS § 600.711(3). While this may be the case, the court need not decide whether general personal jurisdiction exists, because it clearly has limited personal jurisdiction over Defendant.

<u>Defendant's Motion to Dismiss for Improper Venue</u>

       Defendant next argues that, even if this court has personal jurisdiction, the complaint should be dismissed because the Eastern District of Michigan is an improper venue

11

under 28 U.S.C. § 1391. Section 1391(b) applies to the instant case because subject matter jurisdiction is not based solely on diversity of citizenship. Section 1391(b) states in relevant part:

> **Section 1391(b).** A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
> (1) A judicial district where any defendant resides, if all defendants reside in the same state,
>
> (2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) A judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Venue in the Eastern District of Michigan is clearly proper under § 1391(b)(1) because a corporate defendant, for venue purposes, is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). This court has personal jurisdiction over Defendant, a municipal corporation, and therefore Defendant is deemed to reside in the Eastern District of Michigan for purposes of the instant case.

Defendant's Motion to Transfer to the Northern District of Ohio

Finally, Defendant asks that the case be transferred to the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a), because that district would be more convenient. Plaintiff argues that Defendant has not shown that its interests in having the case transferred strongly outweigh the deference accorded to Plaintiff's choice of forum.

*Applicable Law*

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This provision is "intended to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp*, 487 U.S. 22, 29 (1988). Courts considering a transfer motion should evaluate the following specific factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *See Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). In addition, courts should consider whether the parties have agreed to a forum selection clause. *See Stewart*, 487 U.S. at 29-30. Unless the balance of these factors weighs strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *See Nicols v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951).

*Analysis*

Defendant's motion addresses only three of the factors relevant to the transfer inquiry. First, Defendant argues that the Northern District of Ohio would be more convenient for Defendant and all of its witnesses. (Def.'s Mot. at 5.) Plaintiff responds that this courthouse is

13

closer to Toledo than the main courthouse for the Northern District of Ohio, so Defendant's convenience argument should be rejected. (Pl.'s Br. at 14, Ex. 3.)

Second, Defendant notes that Ohio law governs interpretation of the 1969 and 2011 Water Agreements. (Def.'s Mot. at 5.) Plaintiff responds that the applicable law is federal constitutional claims (with which both District Courts will be equally familiar), not Ohio law. (Pl.'s Br. at 15.)

Third, Defendant notes that the forum-selection clause in the 2011 Water Agreement dictates that venue with regards to interpretation and enforcement of the contract will be in Ohio. (Def.'s Reply at 2, attached 2011 Water Agreement at 16.) Plaintiff responds that the forum-selection clause is permissive rather than mandatory, because it precludes parties to the contract from challenging venue in Ohio, but does not preclude them from initiating suit or submitting to jurisdiction elsewhere. (Pl.'s Sur-Reply at 2.) Plaintiff also argues that even if the forum-selection clause were mandatory, it might not be enforceable, and the court should at most weigh it alongside the nine § 1404(a) factors in determining if transfer is appropriate. (Pl.'s Sur-Reply at 2.)

Plaintiff raises several other issues relevant to the § 1404(a) inquiry. Plaintiff argues that filing suit in Michigan is reasonable, given that it is the location of the subject property, its developer, Monroe County, Erie Township, the South County Water Board, and Plaintiff. (Pl.'s Br. at 14.) He also argues that as Defendant allegedly drove the LLCs into bankruptcy, the "relative means" factor clearly weighs in Plaintiff's favor. (Pl.'s Br. at 14-15.) Finally, Plaintiff contends that Michigan has a strong interest in having justice administered here, because Michiganders' rights have been violated. (Pl.'s Br. at 15.)

Defendant has not shown that the balance of factors weighs strongly in its favor. *See Nicol*, 188 F.2d at 537. Defendant alleges but has not shown that the Northern District of Ohio would be more convenient for Defendant and its witnesses, and Defendant's reliance on the choice-of-law clauses in the 1969 and 2011 Water Agreements is misplaced, as Plaintiff is primarily suing on constitutional claims. Similarly, the forum-selection clause in the 2011 Water Agreement does not require transfer to Ohio, not least because Plaintiff's claims against Defendant are largely based on Defendant's conduct under the previous 1969 Water Agreement, which had no such provision.

## *Conclusion*

Plaintiff has met its burden of making a prima facie showing of personal jurisdiction, and venue is therefore proper under §§ 1391(b) and (c). Further, Defendant has not shown that the balance of relevant factors weighs strongly in favor of transfer. Accordingly,

IT IS ORDERED that Defendant's motion to dismiss or transfer is denied.

Dated: JUL 1 5 2011
Detroit, Michigan

_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE